UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE NEW YORK TIMES COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DEFENSE HEALTH AGENCY and DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Defendants. | Civil Action No. 21-cv-566 (BAH)<br><br>Chief Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION</u>

Plaintiff, The New York Times Company ("NYT"), seeks a preliminary injunction to compel defendants, the Defense Health Agency ("DHA"), a component of the United States Department of Defense, Compl. ¶ 3, ECF No. 1, and the United States Department of Health and Human Services ("HHS"), to respond and produce, on an expedited basis and by a date certain "20 business days of the Court's order," all non-exempt records responsive to plaintiff's December 24, 2020 requests, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for extensive data regarding the federal government's nationwide effort to distribute coronavirus vaccines to the American public, Pl.'s Mot. Preliminary Injunction ("Pl.'s Mot.") at 1–2, ECF No. 8; Compl. ¶¶ 8, 16–17.[1]  Defendants object that this request for extraordinary injunctive relief amounts to a litigation tactic "to jump the line on all other FOIA requesters— including numerous other COVID-related requests—" when the gravamen of "[p]laintiff's legal

---

[1]     Plaintiff initially requested an order compelling defendants' response to the FOIA request at issue "on or before March 31, 2021," Pl.'s Mot. at 1, but the parties subsequently proposed a briefing schedule for the requested injunctive relief proposing completion of briefing, after that date, by April 1, 2021, *see* Parties' Joint Status Report, ECF No. 12, which proposed schedule was adopted by the Court, *see* Min. Order (Mar. 15, 2021).

claim is nothing more than a complaint that more than twenty days have passed since the submission of the FOIA requests, for which the remedy is constructive exhaustion of administrative remedies and the opportunity for court supervision of the processing and production—not an order that Defendants immediately process and make productions ahead of all other FOIA requests."  Defs.' Opp'n to Pl.'s Mot. Preliminary Injunction ("Defs.' Opp'n") at 1, ECF No. 14.  Defendants are correct and, for the reasons explained more fully below, plaintiff's motion is denied.

## I.      BACKGROUND

On December 24, 2020, plaintiff submitted identical FOIA requests to DHA and HHS seeking expedited processing and production of four categories of data "from the Defense Health Agency ('DHA')," regarding the federal government's distribution of COVID-19 vaccines. Defs.' Opp'n, Ex. A, Decl. of Brandon Gaylord, HHS Freedom of Information/Privacy Act Director ("Gaylord Decl."), Ex. A (Dec. 24, 2020 Letter from Alexandra Settelmayer, NYT Legal Dep't, to HHS ("HHS FOIA Request") at 15, ECF No. 14-1); *id.*, Ex. B, Decl. of John Boyer, DHA Freedom of Information/Privacy Act Manager ("Boyer Decl."), Ex. A (Dec. 24, 2020 Letter from Alexandra Settelmayer, NYT Legal Dep't, to DHA ("DHA FOIA Request") at 9, ECF No. 14-2).[2]  The requests seek a massive volume of "de-identified" data, broken down by state, geographic zip code and/or county, about vaccination distribution, recipient demographics, including race, ethnicity, age group and occupation, comorbidities, priority groups, usage and waste, providers, manufacturers, and adverse reactions.  Specifically, the requests seek DHA records regarding:

> [1.] Aggregate, de-identified data, broken down by zip code and county of the recipient, showing the number of individuals who have received one dose of a

---

[2]      Citations to exhibits to declarations use the pagination automatically assigned by the Court's Case Management/Electronic Filing (CM/ECF) system.

coronavirus vaccine . . .[and the] aggregate, de-identified data, broken down by zip code and county of the recipient, showing the number of individuals who have been fully vaccinated . . that [is also] . . . [each] broken down by: [t]he race, ethnicity, and age group of vaccine recipients; [t]he comorbidities associated with vaccine recipients; [t]he Vaccination Priority Group (i.e. Phase 1a, Phase 1b) associated with the vaccine recipients; [t]he vaccine recipients' status as a health care worker, long-term care facility resident, or member of any other priority group or profession; [t]he manufacture of the vaccine; and [t]he "administered location type" field entry (as defined by the CDC's Covid-19 Vaccination Reporting Specification).

[2.] All available data showing the number of coronavirus vaccine doses that were allocated and distributed to each vaccine provider, broken down by state, county, and zip code.

[3.] All available de-identified data regarding allergic or adverse reactions to a coronavirus vaccine, including but not limited to the data tracked by the V-SAFE data system.

[4.] All available data showing the number of coronavirus vaccine doses that were distributed but not administered, including any records showing the reasons why those doses were not administered.

DHA FOIA Request at 9–10; HHS FOIA Request at 15–16.

Citing the "urgent demand to inform the public as to how [COVID-19] vaccines are being distributed by the federal government," "whether healthcare providers are administering vaccinations in an equitable way," DHA FOIA Request at 11, and to "facilitat[e] public trust in the COVID-19 vaccines" by "helping the public to understand the number of vaccinations that have been administered," *id.* at 12, plaintiff requested expedited processing from both DHA and HHS within "the ten . . . working day time limit set by law," *id.* at 13 (citing 32 C.F.R. § 286.8(e)(1) and 5 U.S.C. § 552(a)(6)(E)(ii)(I)).[3]

On January 26, 2021, DHA provided an "interim response" acknowledging receipt of plaintiff's FOIA request and granting a fee waiver, but denying the request for expedited

---

[3]     Given that the DHA Request and the HHS Request are identical, except for the recipient's address block at the top of the request, only the DHA Request is cited.

processing because plaintiff had not demonstrated a "compelling need" for such processing. Boyer Decl., Ex. B, Letter from DHA to Alexandra Settelmayer, NYT Legal Department (Jan. 26, 2021) ("DHA Response Letter") at 16–17. DHA explained that plaintiff's request was placed in the "complex queue," with an "estimated completion date [of] December 2021," *id*. at 16, due to "unusual circumstances," including "(a) the need to search for and collect records from a facility geographically separated from [the] office; (b) the potential volume of records responsive to [the] request; (c) the need for consultation with one or more agencies which have substantial interest in either the determination or the subject matter of the records; and (d) an unusually high volume of requests," *id*.; *see also* Compl. ¶ 10. Noting the anticipated large volume of data responsive to plaintiff's request, DHA stated that the response "will require a very lengthy search across the military health system," and may require further processing because the "[r]ecords sought may not be in the format and availability Plaintiff expects." Boyer Decl. ¶ 16.

On February 8, 2021, HHS also acknowledged receipt of plaintiff's FOIA request and, because the request "sought records from DHA, includes references to DHA throughout the request and references DHA's FOIA regulations," Gaylord Decl. ¶ 8, HHS sought clarification whether the request was "mistakenly routed to the incorrect agency," *id*. ¶ 9. Plaintiff made efforts to respond but nothing further was heard from HHS prior to the filing of this lawsuit. Pl.'s Reply, Ex. A, Decl. of Alexandra Settelmayer ("Settelmayer Decl.") ¶ 5, ECF No. 16 (noting plaintiff's efforts to respond via voicemail and email, on Feb. 8, 11, 12, 2021).[4] HHS

---

[4]     HHS initially reported that "[p]laintiff never responded to [the] clarifying email," Gaylord Decl. ¶ 9, but on April 8, 2021, conceded that plaintiff's "response emails were mistakenly missed in the course of performing [the] office's responsibilities," Not. of Correction to Gaylord Decl., Attach. A, Second Decl. of Brandon Gaylord ("2d Gaylord Decl.") ¶ 7, ECF No. 19-1, and that, while HHS did not receive Ms. Settelmayer's voicemail, because "the office [is] in 100% telework [and] the main line is not answered," he had "no reason to doubt [Ms. Settelmayer's]" claim that she left a voicemail, *id*. ¶ 8. Plaintiff's email messages did not clarify that the HHS FOIA Request sought the four categories of data from HHS records, rather than DHA records. *See* Settelmayer Decl., Ex. B, Email

began processing plaintiff's FOIA request only after this lawsuit was filed and, absent any clarification from plaintiff, HHS understands that the HHS FOIA Request, as plainly written, seeks production of responsive "DHA records in HHS' possession." Gaylord Decl. ¶ 10.

Plaintiff initiated this lawsuit on March 3, 2021, asserting a single claim that "Defendants have failed to meet the statutory deadlines set by FOIA, 5 U.S.C. §§ 552(a)(6)(A)(i), 552(a)(6)(B)(i)," such that "Plaintiff is deemed to have exhausted its administrative remedies under FOIA." Compl. ¶ 13. As relief, plaintiff sought an order that defendants each "undertake an adequate search for the requested records and provide those records to Plaintiff within 20 business days of the Court's order." *Id.* ¶¶ 16-17. In a cursory factual reference, plaintiff noted that DHA "denied The Times's request for expedited processing," *id.* ¶ 10, but otherwise asserted no claim that defendants violated any part of FOIA's provisions, under 5 U.S.C. §§ 552(a)(6)(E), governing expedited processing or demanded no relief from those denials. A week later, on March 11, 2021, plaintiff moved for preliminary injunctive relief compelling defendants to respond with virtually immediate production of records responsive to the FOIA requests, which motion is ripe for resolution.

## II.    LEGAL STANDARD

A preliminary injunction "is a stopgap measure, generally limited as to time, and intended to maintain a status quo or 'to preserve the relative positions of the parties until a trial on the merits can be held.'" *Sherley v. Sebelius*, 689 F.3d 776, 781–82 (D.C. Cir. 2012) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). To obtain relief, a plaintiff seeking a preliminary injunction must establish that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of

---

Correspondence between Natasha Taylor, HHS Government Information Specialist, and Alexandra Settelmayer (Feb. 8, 2021) at 2–3, ECF No. 16-2.

equities" is in their "favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016); *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016). The first factor is also the "most important factor." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014); *see also Munaf v. Geren*, 553 U.S. 674, 690 (2008) ("[A] party seeking a preliminary injunction must demonstrate, among other things, 'a likelihood of success on the merits.'" (quoting *Gonzales v. O Centro Espirita Beneficente União do Vegetal*, 546 U.S. 418, 428 (2006))).[5] Moreover, "'[t]he basis of injunctive relief in the federal courts has always been irreparable harm,'" and if a party fails to make a showing of irreparable harm, "that alone is sufficient . . . to conclude that the district court did not abuse its discretion." *CityFed Fin. Corp. v. Off. Thrift Supervision, U.S. Dep't of Treas.*, 58 F.3d 738, 747 (D.C. Cir. 1995) (quoting *Sampson v. Murray*, 415 U.S. 61 (1974)). A preliminary injunction is an "extraordinary remedy," *Winter*, 555 U.S. at 22 (citation omitted), that "should be granted only when the party seeking the relief, by a clear showing, carries the burden or persuasion" on each of the four factors, *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).

---

[5]      Plaintiff posits that the "sliding-scale" approach to evaluating injunctive relief remains in force in this Circuit after *Winter*, Pl.'s Mem. at 4–5, such that if "the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor," *id.* (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009)). The viability of the sliding-scale approach is questionable, however, in the wake of *Winter's* holding that a court may not issue "a preliminary injunction based only on a possibility of irreparable harm [since] injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter*, 557 U.S. at 22. *Davis*, 571 F.3d at 1296 (Kavanaugh, J., concurring) (noting that, after *Winter*, "the old sliding-scale approach to preliminary injunctions—under which a very strong likelihood of success could make up for a failure to show a likelihood of irreparable harm, or vice versa—is no longer controlling, or even viable" (internal quotations and citation omitted)); *see also In re Navy Chaplaincy*, 738 F.3d 425, 428 (D.C. Cir. 2013) (requiring proof that all four prongs of preliminary injunction standard are met before injunctive relief can be granted); *cf. Nken v. Holder*, 556 U.S. 418, 438 (2009) (Kennedy, J., concurring) ("When considering success on the merits and irreparable harm, courts cannot dispense with the required showing of one simply because there is a strong likelihood of the other."). Plaintiff's assertion that "[c]ourts in this Circuit . . . have suggested that the sliding-scale framework still applies," Pl.'s Mem. at 5 n.4, overstates continued adherence to this approach since, at a minimum, *Winter* is read "at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction,'" *Sherley*, 644 F.3d at 393 (quoting *Davis*, 571 F.3d at 1296 (concurring opinion)). Plaintiff bears the burden of persuasion on all four preliminary injunction factors to secure this extraordinary remedy.

Particularly pertinent here, the D.C. Circuit has cautioned that a preliminary injunction generally "should not work to give a party essentially the full relief [it] seeks on the merits," *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (citing *Selchow & Righter Co. v. W. Printing & Lithographing Co.*, 112 F.2d 430, 431 (7th Cir. 1940)); *see also Diversified Mortgage Inv'rs v. U.S. Life Ins. Co. of N.Y.*, 544 F.2d 571, 576 (2d Cir. 1976) (collecting cases), and this equitable power "should not be exercised unless it is manifest that the normal legal avenues are inadequate [and] that there is a compelling need to give the plaintiff the relief he seeks," *Dorfmann*, 414 F.2d at 1174.

## III.   DISCUSSION

In seeking to compel defendants to process and produce, "on an expedited basis," all non-exempt documents responsive to plaintiff's two outstanding FOIA requests, Pl.'s Mem. at 2, plaintiff effectively requests immediately the full relief called for in the Complaint, but without the aid of additional factual support and briefing analysis ordinarily available in assessing dispositive motions in FOIA cases and notwithstanding the ordinary administrative process for addressing FOIA requests in a fairly ordered and transparent process guided by agency regulations.[6]   As detailed below, plaintiff challenges only defendants' failure to respond to its

---

[6]      Plaintiff insists it "has met the requirements for expedited processing," Pl.'s Reply Mem. Supp. Mot. for Preliminary Injunction ("Pl.'s Reply") at 1, ECF No. 15, but that issue is not properly before this Court.  As noted, *supra* Part I, although neither defendant granted plaintiff's request for expedited processing, plaintiff asserts no claim challenging the agencies' explicit or constructive denial of expedited processing in the Complaint, nor demands relief to override defendants' denial of plaintiff's expedited processing request.  *See generally* Compl. Consequently, whether defendants improperly denied plaintiff's request for expedited processing, under 5 U.S.C. § 552(a)(6)(E)(iii), is not raised in the Complaint and thus may not be the subject of preliminary injunctive relief since plaintiff can show no likelihood of success on a claim that is not even asserted.  *See, e.g., De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (finding that "[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," but declining to grant relief where the requested injunction "deals with a matter wholly outside the issues in the suit" and so "in no circumstances can be dealt with in any final injunction that may be entered"); *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("A court's equitable power lies only over the merits of the case or controversy before it."); *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997) (per curiam) (("A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit."); *Omega World Travel v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A]

FOIA requests within the 20-day statutory deadlines, Pls.' Mem. at 3, reflecting a clear misconstruction of the remedies afforded by the FOIA.  Defendants rightly contend that plaintiff fails to show, beyond the expiration of the 20-day statutory period, entitlement to the requested extraordinary preliminary injunctive relief, Defs.' Opp'n at 1, or any irreparable harm to plaintiff absent such relief, *id.* at 1–2, and that, given the likely massive volume of responsive data, with the concomitant heavy processing burden on defendants and resulting disruption of the ordinary FOIA processing on similarly-situated FOIA requesters, the balance of equities and the public interest do not favor preliminary injunctive relief here, *id.* at 2.  This Court agrees with defendants that plaintiff falls far short of satisfying any of the preliminary injunction factors, which are examined *seriatim*.

### A.      Plaintiff is Not Likely to Succeed on the Merits of Claim to Entitlement to Processing and Production of FOIA Records Within 20 Business Days

Plaintiff posits that it is likely to succeed on the merits of its claim because defendants' "failure to respond to [plaintiff's] valid FOIA request violates the agency's obligations under FOIA to respond within 20 business days and to make reasonable efforts to conduct a search for responsive documents."  Pl.'s Mem. at 5.  Yet, as defendants observe, any alleged failure by the defendants to respond within the 20-day statutory deadline, under 5 U.S.C. § 552(a)(6)(A)(i),

---

preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action"); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."); *Steele v. United States*, No. l:14-cv-1523 (RCL), 2020 U.S. Dist. LEXIS 229629, at *20 (D.D.C. Dec. 4, 2020) (denying preliminary injunction motion "because [Court] cannot grant preliminary relief on claims not pleaded in the complaint."); *Bird v. Barr*, No. 19-cv-1581 (KBJ), 2020 U.S. Dist. LEXIS 130277, at *7 (D.D.C. July 23, 2020) ("[T]his Court only possesses the power to afford preliminary injunctive relief that is *related* to the claims at issue in the litigation") (emphasis in original). Consequently, plaintiff's argument for preliminary injunctive relief because its FOIA requests "meet[] the requisite showings for [] expedited processing," Pl.'s Reply at 7, is readily rejected.  To the degree plaintiff uses its urgency arguments to show irreparable harm, by claiming that "delaying a response would compromise a significant recognized interest . . . [namely,] the health of the public," *id.* (citing Pl.'s Mem., Ex. A, Decl. of David E. McCraw, NYT Legal Dep't ("McCraw Decl."), Ex. A, DHA Request at 6, ECF No. 9-1), these arguments are considered *infra* Part B.

does not entitle plaintiff to immediate processing and production.  Defs.' Opp'n at 15.[7]  Rather,

as the D.C. Circuit has explained, "[i]f the agency does not adhere to FOIA's explicit timelines,

the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep

cases from getting into court."  *Citizens for Responsibility & Ethic in Wash. v. FEC* ("*CREW*"),

711 F.3d 180, 189 (D.C. Cir. 2013) (Kavanaugh, J.).

In short, plaintiff appears to misapprehend the way in which the FOIA operates.  While

agencies have 20 working days to "make a 'determination' with adequate specificity, such that

any withholding can be appealed administratively," *id.* (quoting 5 U.S.C. § 552(a)(6)(A)(i)), the

consequence of agency delay in rendering such a determination bears only on the requester's

ability to get into court, *id.*  Requesters are "generally required to exhaust administrative appeal

remedies before seeking judicial redress," *id.* at 184, but an agency's failure to "make and

communicate its 'determination'" within the statutory timeline allows the requester to be

"deemed to have exhausted his administrative remedies," *id.* (quoting 5 U.S.C. §

552(a)(6)(C)(i)), and to obtain judicial review.  After a lawsuit is filed, "the agency may continue

---

[7]        Defendants additionally argue that plaintiff is not likely succeed on the merits because plaintiff submitted an invalid FOIA request to which HHS is not required to respond. Defs.' Opp'n at 13.  Plaintiff characterizes the references to DHA throughout the HHS FOIA Request as "minor error[s]" that do not "permit[] HHS to simply ignore the request," Pl.'s Reply at 5, and further argues that HHS has a duty to "construe the request liberally," *id.* Both sides' arguments miss the mark.  The HHS FOIA Request, identical to the DHA FOIA Request, is both intelligible and valid.  To the extent this request for "records from the Defense Health Agency" held by HHS that fall within the four broad data-sets was erroneous, HHS has no duty to cure any mistakes made by plaintiff in stating its request. *See, e.g.*, *Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) ("Agencies must read FOIA requests 'as drafted.'" (quoting *Miller v. Casey*, 730, 777 (D.C. Cir. 1984)));  *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996) ("The agency . . . is not obliged to look beyond the four corners of the request . . . ."); *Am. Oversight v. United States Dep't of Justice*, 401 F. Supp. 3d 16, 34 (D.D.C. 2019) ("An agency must liberally construe a FOIA request, but it is not obligated to rewrite the request to ask for more than the requester did.") (internal quotations and citations omitted); *Kenney v. Dep't of Justice*, 603 F. Supp. 2d 184, 189 (D.D.C. 2009) ("Plaintiff cannot allege that the agency failed to produce responsive records, when the records he now identifies fall outside the scope of his . . . request").  Accordingly, HHS correctly "plans to proceed under its current understanding of the FOIA request as written," Defs.' Opp'n at 8, namely that plaintiff seeks "DHA's records in HHS' possession," Gaylord Decl. ¶ 10.  If plaintiff failed to frame its HHS FOIA Request accurately, the remedy is clear: plaintiff may submit a new, corrected FOIA request to HHS—and to avoid wasting resources of HHS, plaintiff should withdraw the request for records plaintiff did not intend to seek.  Plaintiff is not, however, entitled to force HHS to cure plaintiff's own substantive mistakes by stretching the plain text of the HHS FOIA Request to reflect the meaning that plaintiff desires or actually intended but that substantially differs from its plain text.

to process the request, and the court (if suit has been filed) will supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request." *Id.* at 189 (citing 5 U.S.C. § 552(a)(6)(C))).  Moreover, as relevant here, "[t]he 20-working-day timeline is not absolute," *id.* at 184, as the agency may, "[o]nce in court . . . extend its response time" upon a showing of "exceptional circumstances," *id.* at 188.

Plaintiff's sole asserted basis for entitlement to immediate record production "within 20 business days of the Court's order," Compl. ¶¶ 16–17, is that defendants failed to issue a final determination within the 20-day statutory deadline, but the absence of an agency's final determination within 20 business days of the filing of a FOIA request merely opens the courthouse doors for a lawsuit and authorizes judicial supervision of the agency's diligence in responding to the request. This cited "failure" by defendant does not trigger entitlement to production of responsive records, much less immediate production, of the enormous data sets plaintiff's FOIA requests seek.[8]

Plaintiff's likelihood of success is further diminished by defendants' demonstration of unpredictable exceptional circumstances saddling the agencies with an increased workload despite considerable progress in reducing their backlogs, circumstances that are not acknowledged by plaintiff.  "Exceptional circumstances" do not include "a delay that results from a predictable agency workload of requests . . . unless the agency demonstrates reasonable progress in reducing its backlog of pending requests."  5 U.S.C. § 552(a)(6)(C)(ii).  Upon such a showing, "so long as 'the agency is exercising due diligence in responding to the request, the

---

[8]      Plaintiff suggests injunctive relief is also appropriate because defendants "failed to make reasonable efforts to search for the records requested," Pl.'s Mem. at 5 (quoting 5 U.S.C. § 552(a)(3)(C)); *see also* Compl. ¶¶ 16–17, even though defendants are currently processing plaintiffs' two requests, with DHA logging the DHA FOIA Request in a queue for complex requests, Defs.' Opp'n at 7 (citing DHA Response Letter at 15–17), and HHS conducting an "initial analysis" of the HHS FOIA Request as written, Gaylord Decl. ¶ 10.  Just because defendants have begun but not completed their searches and processing of responsive records within the 20-day statutory period does not mean those searches are inadequate or the efforts are not reasonable; instead, this claim is simply premature.

court may retain jurisdiction and allow the agency additional time to complete its review of the records.'" *CREW*, 711 F.3d at 185 (quoting 5 U.S.C. § 552(a)(6)(C)(i)).

Qualifying exceptional circumstances are amply demonstrated here.  First, DHA experienced a dramatic increase in FOIA requests and litigation matters over the last four years and the agency has made meaningful efforts to keep pace with this surge, despite limited personnel.  Boyer Decl. ¶ 10 (reporting 613 requests and 581 closings in 2017, 989 requests and 385 closings in 2018, 1,186 requests and 762 closings in 2019 and 1,020 requests and 752 closings in 2020); *id.* ¶ 7 (describing the 6 full time staff responsible for fulfilling all DHA FOIA requests).  DHA's FOIA personnel have been further inundated by a "significant increase in . . . FOIA litigations matters," many of which "have monthly court-ordered production deadlines." *Id.* ¶ 11.  The impact of the workload spike on DHA's already "extremely strained personnel resources," *id.* ¶ 12, has been exacerbated by the "widespread disruptions of normal operations in the Washington, D.C. area" caused by the COVID-19 pandemic, *id.*, which has "plac[ed] unprecedented strain on the Department's networks and other systems" due to employee teleworking and has led to "periodic network interruptions that limit [employees'] ability to view and send emails, or to even log into the DHA network remotely," *id.* ¶ 14.  In addition, DHA has received approximately 41 FOIA requests to date for records related to DHA's response to the pandemic.  *Id.* ¶ 15.  To its credit, DHA is making significant strides in improving its FOIA processing, by restructuring its records-management system, planning to hire additional staff, and seeking to acquire improved software to assist in processing FOIA requests.  *Id.* ¶ 11.

HHS, similarly, reports an even steeper increase in FOIA requests over the last five years, and particularly since the pandemic began: the number of incoming FOIA requests between 2016 and 2019 jumped by 26%, from 1,377 to 1,733, and further skyrocketed by 700 to 2,066 requests

in the 12 months since the COVID FOIA surge began.  Gaylord Decl. ¶¶ 20–21.  Burdened by

the 2019 30-day federal government shutdown, *id.* ¶ 22, at least sixty FOIA litigation matters

involving 130 to 160 individual FOIA requests, *id.* ¶ 27, and the increasing complexity of FOIA

requests, *id.* ¶ 25, HHS' approximately 20 employees, which number includes only half the

senior personnel the office requires, Defs.' Opp'n at 4 (citing Gaylord Decl. ¶ 24), are well

beyond capacity.  In order to address the litigation backlog, HHS has hired four contractors and

reallocated two additional contractors to manage the extensive litigation-related production.

Gaylord Decl. ¶ 30.  Taken together, these conditions persuasively demonstrate that defendants'

present circumstances, coupled with the sheer anticipated volume of records responsive to

plaintiff's data requests, are sufficiently extreme and unusual to allow for some delayed

processing.

Moreover, defendants have taken various steps to address both of plaintiff's FOIA

requests, as evidenced by DHA's interim response, which projected an anticipated completion

date of December 2021, DHA Response Letter at 2, the agency's initiation of a search for the

requested records "with two Program Offices," Boyer Decl. ¶ 16, and HHS' initiation of

processing plaintiff's request, Gaylord Decl. ¶ 10, indicating the exercise of due diligence and

warranting additional time to complete the request.

Plaintiff has not shown a likelihood of success on the merits of its only claim that it is

entitled to production of responsive records within 20 business days "set by FOIA, 5 U.S.C. §§

552(a)(6)(A)(i), 552(a)(6)(B)(i)."  Compl. ¶ 13; *see supra* n.6.  Lapse of this statutory period

without an agency "determination and the reasons therefor," 5 U.S.C. §§ 552(a)(6)(A)(i)(I),

gives plaintiff precisely what it has now obtained, which is to be "deemed to have exhausted his

administrative remedies," *id.* § 552(a)(6)(C)(i), and nothing more, and certainly not entitlement

to production of the requested records "to Plaintiff within 20 business days of the Court's order," Compl. ¶¶ 16-17.  *See, e.g.*, *Protect Democracy Project, Inc. v. United States DOJ*, No. 20-2810 (EGS), 2020 U.S. Dist. LEXIS 203292, at *12–18 (D.D.C. Oct. 30, 2020) (finding no likelihood of success on plaintiff's claim of agency's delayed determination of FOIA request beyond statutory period but only on "claim that DOJ improperly denied its request for expedited treatment."); *Baker v. Consumer Fin. Prot. Bureau*, Civil Action No. 18-2403 (CKK), 2018 U.S. Dist. LEXIS 187002, at *14 (D.D.C. Nov. 1, 2018) (finding no likelihood of success on the merits on FOIA claim that agency failed "to meet the twenty-day deadline [since this] entitled Plaintiff only to access to this Court, not to the immediate processing and release of the requested documents."); *Daily Caller v. United States Dep't of State*, 152 F. Supp. 3d 1, 11 (D.D.C. 2015) (Howell, J.) (denying preliminary injunctive relief, noting that agency's failure to "issue a final determination within the twenty-day statutory deadline . . . [s]tanding alone . . . does not conclusively demonstrate that the plaintiff is likely to prevail in its underlying effort to accelerate the processing of its FOIA requests and the ultimate production of any responsive, non-exempt records.").

Plaintiff's insufficient showing of a likelihood of success on the merits requires denial of its motion for preliminary injunctive relief.

B.    **Plaintiff Fails to Show Irreparable Harm**

Plaintiff fails to meet the "high standard for irreparable injury" required for preliminary injunction relief.  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (noting that showing of irreparable harm is an "independent prerequisite" for preliminary injunction).  To show irreparable harm, plaintiff must demonstrate that it faces an injury that is "both certain and great," "actual . . . not theoretical," and "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."  *Wis. Gas Co. v. Federal*

13

*Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam) (quotation marks and emphasis omitted).  Further, plaintiff must show "the alleged harm will directly result from the action which the [plaintiff] seeks to enjoin," as "the court must decide whether the harm will *in fact* occur[]."  *Id.* (emphasis in original); *see also Winter*, 555 U.S. at 22 (rejecting "'possibility' standard [as] too lenient," explaining "[o]ur frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.") (emphasis in original).

To support its claimed irreparable harm, plaintiff describes a parade of harms from delay in releasing the four requested data sets, contending that such delay could "pose an imminent threat to the life and safety of individuals in the United States," Pl.'s Mem. at 8, by diminishing the strength of public oversight, *id.* at 6, preventing the public's access to accurate reporting about the efficacy of the vaccine and the equity of the vaccine rollout, *id.* at 7, and depriving public health officials of information that would help them "develop appropriate responses to . . . inequities" and stem "preventable deaths," *id*.  While attention-grabbing, these purported harms to oversight, vaccination hesitancy and equitable vaccine distribution, which are all important to public health generally, are all premised on theoretical injuries, with no assurance that the remedy for these cited public health ills is production of the datasets requested in plaintiff's FOIA requests.  Such "bare allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur," *Wis. Gas Co.*, 758 F.2d at 674 (emphasis in original), and whether "the alleged harm will directly" flow from the occurrence movant seeks to compel or enjoin, *id*.  Thus, as serious as the harms framed by plaintiff are, they are not sufficiently certain, concrete or imminent to amount to the requisite irreparable harm necessary for extraordinary injunctive relief.  *See, e.g.*, *Landmark Legal Found.*, 910 F. Supp. 2d at 277

14

(denying preliminary injunction finding plaintiff's "justifications (that the matters are of public interest and concern the health and economic wellbeing of the public) are not sufficient to satisfy the standard" of urgency for expedited processing).

Further analysis of each of the types of harms plaintiff claims would result absent injunctive relief, only confirms that the showing of irreparable harm is wholly insufficient here. As to purported harm to oversight, plaintiff cites several cases for the proposition that preliminary injunctive relief in FOIA cases is appropriate to ensure prompt disclosure held by federal agencies since "'stale information is of little value.'"  Pl.'s Mem. at 6 (quoting *Ctr. for Pub. Integrity v. U.S. Dep't of Defense,* 411 F. Supp. 3d 5, 10 (D.D.C. 2019) (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (holding that an agency cannot moot a pattern or practice claim by providing the requested documents)).  In those cases, however, unlike here, the movant was able to make two critical showings: first, a likelihood of success on the merits of a claim that expedited processing was improperly denied by an agency and, second, that the requested records were time-sensitive and highly probative, or even essential to the integrity, of an imminent event, after which event the utility of the records would "be lessened or lost." *Ctr. for Public Integrity*, 411 F. Supp. 3d at 12.[9]  Absent a critical need for records at a scheduled or imminent event, however, preliminary injunctive relief to expedite

---

[9]       *See, e.g.*, *Protect Democracy Project, Inc.*, 2020 U.S. Dist. LEXIS 203292, at \*4, \*15–18 (granting preliminary injunction to require, after agency denial of, expedited processing of FOIA request relating to "potential political interference by the Department of Justice with the U.S. Postal Service's preparations for processing the anticipated surge in voting by mail in light of the COVID-19 pandemic" given imminent presidential election); *Brennan Ctr. for Justice at NYU Sch. of Law v. DOC*, Civil Action No. 20-2674 (TJK), 2020 U.S. Dist. LEXIS 203291, at \*10-11 (D.D.C. Oct. 30, 2020)(granting partial preliminary injunctive relief for expedited processing by date certain only as to FOIA records for which otherwise "the value of the information … to inform the public about these matters would be materially lessened or lost."); *Ctr. for Public Integrity*, 411 F. Supp. 3d at 7, 11–12 (granting preliminary injunction to require, after agency denial of,  expedited processing of requests "closely relate[d] to an ongoing impeachment inquiry" regarding whether President Trump pressured the government of Ukraine to conduct an investigation); *Aguilera v. Fed. Bureau of Investigation*, 941 F. Supp. 144, 145 (D.D.C. 1996) (granting preliminary injunction to compel, after agency denial of, expedited processing of FOIA request seeking documents related to requester's role as a confidential FBI informant ahead of imminent evidentiary hearing).

production of records in FOIA cases is generally denied.[10]  The FOIA requests at issue here

clearly fall in this latter category of cases where preliminary injunctive relief is generally denied.

Plaintiff's FOIA requests seek records that will be indisputably valuable in informing the public

about how the federal government functioned in preserving public health during a global

pandemic, but these records are not "time-sensitive" in the sense of losing value vis-à-vis any

date certain.  As the government observes, "Plaintiff has not shown that there is any particular

time limit on the usefulness of that information; public critiques of how the government handled

vaccination, for example, do not have an expiration date, and Plaintiff has not identified any

future date at which COVID vaccines and their distribution and effects will not be of interest to

the public."  Defs.' Opp'n at 18.

Moreover, while the public interest in oversight of government functions will

undoubtedly be served when the requested data sets are furnished to plaintiff to fuel additional

reporting to inform the public about the strengths and weaknesses over time of the federal

government's vaccination program, delay in this production is not halting such oversight. Indeed,

plaintiff cites three of its own stories as authority for problems with the vaccine rollout. Pl.'s

Mem. at 6 n.5, 7 nn. 6 & 7.  Thus, plaintiff's reporting has not been stymied by any delay in

production of the data sets in response to the HHS and DHA FOIA Requests.  *See Daily Caller*,

---

[10]     *See, e.g., Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 35, 39–40 (D.D.C. 2014) (denying preliminary injunction for expedited processing of records concerning the government's "surreptitious use of certain devices to collect communications information"); *Allied Progress v. Consumer Fin. Prot. Bureau*, Civil Action No. 17-686 (CKK), 2017 U.S. Dist. LEXIS 67889, at *1–2 (D.D.C. 2017) (denying injunction for expedited processing of FOIA request for records of correspondence between the Consumer Financial Protection Bureau and certain U.S. Senators regarding the Prepaid Rule); *Daily Caller*, 152 F. Supp. 3d at 8–13 (denying preliminary injunctive relief to expedite processing of records responsive to FOIA request regarding Secretary of State Clinton's use of a private email server during her time at the State Department); *Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, (D.D.C. 2013) (denying preliminary injunction seeking expedited processing for records concerning an individual's employment termination); *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 279 (D.D.C. 2012) (denying preliminary injunction seeking to compel expedited processing of FOIA request related to agency's alleged delay of "a 'controversial' regulation until after the November 2012 presidential election").

152 F. Supp. 3d at 13 (denying injunctive relief where, "[t]hough mindful of the plaintiff's significant interest in receiving timely access to documents with potential bearing on a matter of obvious public interest, the Court is not persuaded that any injury the plaintiff will experience absent the requested injunction will irreparably hinder its ability to continue its coverage); *accord Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 319 (D.D.C. 2017) (denying preliminary injunction and declining to find "an irreparable informational injury" because "[t]o hold otherwise would mean that whenever a statute provides for potential disclosure, a party claiming entitlement to that information in the midst of a substantial public debate would be entitled to a finding of irreparable informational injury, which cannot be so.").

Plaintiff also asserts broadly that parts of "the American population remain skeptical about the safety of . . . vaccines," Pl.'s Mem. at 7, to bolster their claim that without prompt production of the requested data sets, Americans will be left without a basis to form "an opinion about whether or not to receive the vaccine," *id.* Plaintiff is harshly critical of defendants' assertion that it "strain[s] credulity . . . that whatever raw data (if any) Plaintiff receives about adverse reactions to vaccinations will materially increase or decrease vaccine hesitancy among the general public," Defs.' Opp'n at 18, accusing defendants of taking a "dismissive" attitude toward "the value of public access to information," Pl.'s Reply at 8, and seeing "public critique" as an "irritation" to be deferred, *id.* Contrary to plaintiff's hyperbole, any link between the requested data sets—even with plaintiff's subsequent handling, analysis and reporting on that information—and the population's hesitancy about vaccines and the COVID-19 survival rates in the United States population is, at best, speculative. The government's vaccine rollout is an independent and ongoing event influenced by countless variables that will directly bear on

distribution and the public's access to, and belief in, the efficacy and safety of the vaccines, and plaintiff provides little causal nexus between delayed record production here and either vaccine skepticism or the success of the vaccination rollout.

Plaintiff further states that "thousands . . . depend on the success and equitability of the government's vaccination project," *id*. at 7, and raises the specter, without immediate access to the requested data sets, of the public being unable to "understand and evaluate the government's handling of the [vaccine] rollout," Pl.'s Mem. at 6, with the concomitant risk of inequitable distribution of vaccines, *id*.  Again, plaintiff's descriptions of issues with the vaccine rollout, as troubling as they may be, fall short of demonstrating that the requested data sets are the necessary remedy to ensure public access to, and trust in, the vaccine to satisfy the high standard required by the irreparable harm analysis.[11]

In sum, plaintiff has failed to show irreparable harm warranting the requested preliminary injunctive relief.

## C.    The Balance of Equities and Public Interest

Finally, plaintiff has not shown that the balance of hardships and the public interest weigh in favor of injunctive relief.  These factors require courts to "balance the competing claims of injury and . . . consider the effect on each party with the granting or withholding of the requested relief," *Winter*, 555 U.S. at 24 (quoting *Amoco Production Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)), in addition to paying "particular regard for the public consequences in employing the extraordinary remedy of injunction," *id*. (quoting *Weinberger v. Romero-Barcelo*,

---

[11]    Defendants argue that plaintiff is only permitted to rely on a showing that "[it] is likely to suffer irreparable harm in the absence of preliminary relief," Defs.' Opp'n at 18 (quoting *Daily Caller*, 152 F. Supp. 3d at 5), and that it cannot show irreparable injury by "speculating about the benefits that faster processing and production might yield for the general public," *id*.  The Court need not resolve the validity of a third-party irreparable harm claims here since, given the speculative nature of those alleged harms, combined with attenuated causal nexus to the requested relief of prompt production of the requested records, no irreparable harm is demonstrated.

456 U.S. 305, 312 (1982)).  Where the federal government is the opposing party, the balance of equities and public interest factors merge.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Issuing the requested injunction here would impose an extraordinary burden on defendants.  As detailed above, defendants already face significant challenges in keeping up with FOIA requests and litigation and adding plaintiff's massive request for four data sets to the workload of each agency on an expedited timeline would force the agencies to shift their already strained resources toward fulfilling this request.  HHS reports that its resources are stretched thin and that, not even considering the recent and significant increase in FOIA submissions, the "increasing frequency with which FOIA requesters have resorted to litigation," Defs.' Opp'n at 4 (citing Gaylord Decl. ¶ 26), has led HHS to process "17,000 to 20,000 pages per month pursuant to orders or agreements in FOIA litigation," *id.* (citing Gaylord Decl. ¶ 27).  Similarly, DHA, which had a FOIA Service Center consisting of five staff members until March 2021, when that number rose to 6, *id.* at 5–6 (citing Boyer Decl. ¶ 7), has received "dozens of FOIA request relating directly to the COVID pandemic," *id.* at 6 (citing Boyer Decl. ¶ 15).  Considering the scope of the nation-wide data collection plaintiff seeks, and the fact that DHA has already reported that it will take at least until December 2021 to process, the Court is concerned whether plaintiff's demand for fulfillment of the FOIA requests within 20 days is even physically possible for the agencies, even if plaintiff were entitled to such relief, which plaintiff is not.  Put another way, plaintiff's assertion that "[t]he government itself will not endure undue hardship if ordered to expedite [plaintiff's] request," Pl.'s Mem. at 8, is highly suspect.  These clear burdens on defendants, when compared to the theoretical damage plaintiff claims would occur if the records are not immediately produced, weigh heavily against preliminary relief.

The injunction would also impose undue hardship on similarly situated FOIA requesters, who are depending on, and adhering to, regular administrative FOIA record production processes to obtain information important to them from DHA and HHS. *See Nation Magazine v. Department of State*, 805 F. Supp. 68, 74 (D.D.C. 1992) (holding that entry of a preliminary injunction expediting a FOIA request over other pending requests "would severely jeopardize the public's interest in an orderly, fair, and efficient administration of [] FOIA"). Hundreds of individuals and organizations await the results of pending requests, filed ahead of plaintiff's requests, and also seek information relating to the COVID pandemic, *see* Defs.' Opp'n at 20; Gaylord Decl. ¶ 34 (explaining that the HHS FOIA office has "received over 550 FOIA requests directly relating to the coronavirus and/or COVID-19" and that many of these requests have been granted expedited processing); Boyer Decl. ¶ 15. These third parties would almost certainly face additional delays if defendants were forced to accommodate plaintiff's complex requests for what could be enormous data sets. Plaintiff's assurance that this is not a case of trying to "'leap frog' to the front of the line," Pl.'s Mem. at 8 (quoting *Aguilera*, 941 F. Supp. at 152), rings hollow under these circumstances. *See Baker v. Consumer Fin. Prot. Bureau*, 2018 U.S. Dist. LEXIS 187002, at *18–19 (weighing balance of hardships and public interest factor against preliminary injunction where "granting [plaintiff's] . . . request . . . would harm the approximately 100 other requestors, 20 of whom have complex requests, in line ahead of [p]laintiff").

The potential public harm by grant of the requested preliminary injunction is further exacerbated by the nature of the records plaintiff seeks. Although plaintiff's request is for "raw data concern[ing] the geography and demographics of vaccine distribution and anonymous information about adverse reactions," Pl.'s Reply at 11, whether all potentially responsive data is

maintained in an anonymized fashion or must be processed to render it disclosable is unclear on the current record.  Consequently, requiring defendants to produce these records on an artificially abbreviated deadline "raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA." *Daily Caller*, 152 F. Supp. 3d at 14.

Plaintiff's only remaining argument is wholly unpersuasive.  Plaintiff contends that expediting its request would not be disruptive to defendants because the request is "narrowly focused on a small universe of factual records," Pl.'s Mem. at 8, a contention entirely at odds with the scope of plaintiff's request seeking detailed geographic and demographic data regarding the federal government's efforts to vaccinate millions of people across the entire United States. These considerations all militate strongly against grant of the preliminary injunction.

## IV.   CONCLUSION

Having failed to demonstrate that any of the factors governing review of the instant motion favor preliminary injunctive relief, plaintiff cannot meet its burden to show that issuance of this relief is warranted.  Accordingly, for the foregoing reasons, the plaintiff's Motion for a Preliminary Injunction, ECF No. 8, requesting immediate relief on the merits of its FOIA claim, and entry of an order requiring defendants to process and produce all non-exempt requested data sets within 20 business days, is **DENIED**.

Plaintiff's claim therefore will proceed in the normal course, with judicial supervision of defendants' progress in processing the DHA and HHS FOIA Requests while ensuring that the agency continues to exercise due diligence in doing so.  *CREW*, 711 F.3d at 189 (citing 5 U.S.C. § 552(a)(6)(C)).  In light of defendants' April 5, 2021 answer to the Complaint, ECF No. 17, and that parties' obligation to submit a joint report to the Court within fourteen days of that answer as directed by the Standing Order, *see* Standing Order ¶ 3(b)(ii), ECF No. 5, the parties shall, by

April 30, 2021, jointly prepare and submit a report to the Court, including (1) an estimate

provided by defendants of when final determinations on the two FOIA requests are expected to

be made; and (2) a proposed schedule for the filing of dispositive motions.


Date:  April 25, 2021


_____
BERYL A. HOWELL
Chief Judge